**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MF GLOBAL INC.,<br><br>          Debtor. | Bankruptcy Case No. 11-2790 (MG)<br>(SIPA proceeding) |

**MEMORANDUM OF LAW IN SUPPORT OF CONOCOPHILLIPS'**
**MOTION TO WITHDRAW THE REFERENCE WITH RESPECT TO**
**THE TRUSTEE'S MOTION TO CONFIRM HIS TREATMENT OF**
**LETTERS OF CREDIT PROVIDED BY CONOCOPHILLIPS**

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019
(212) 403-1000

CADWALADER, WICKERSHAM & TAFT LLP
700 Sixth Street, N.W.
Washington, D.C.  20001
(202) 862-2200

*Attorneys for ConocoPhillips Company and*
    *ConocoPhillips Canada Marketing &*
    *Trading ULC*

August 3, 2012

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ................................................................................................................5

    A.    ConocoPhillips Company and MF Global ..............................................5

    B.    ConocoPhillips Canada and MF Global ................................................6

    C.    The expiration of the foreign letters of credit ......................................7

    D.    The parties' interim agreement ..............................................................7

    E.    The Trustee's determination of ConocoPhillips' claims .......................8

    F.    The Trustee's motion to confirm ..........................................................9

ARGUMENT ....................................................................................................................9

I.    WITHDRAWAL OF THE REFERENCE IS MANDATORY WHEN A
    PROCEEDING REQUIRES SIGNIFICANT INTERPRETATION OF
    FEDERAL LAW OTHER THAN THE BANKRUPTCY CODE. ....................................9

II.    WITHDRAWAL OF THE REFERENCE IS REQUIRED HERE TO
    ADDRESS NUMEROUS NOVEL ISSUES OF FEDERAL NON-
    BANKRUPTCY LAW. ...................................................................................12

    A.    Withdrawal of the reference is required in light of the Trustee's
    unprecedented reliance on CFTC Rule 190.08(a) and related
    commentary..........................................................................................13

    B.    Withdrawal of the reference is required to resolve the direct
    conflict between the Trustee's interpretation of CFTC Rule
    190.08(a) and amendments to the Commodity Exchange Act that
    prohibit the CFTC from regulating letters of credit...............................15

    C.    Withdrawal of the reference is required to address substantial
    preemption issues raised by the Trustee's motion. ...............................17

    D.    Withdrawal of the reference is required to resolve conflicts
    between the Trustee's interpretation of CFTC Rule 190.08(a) and
    provisions of the Bankruptcy Code. ......................................................19

        1.    Section 541(a) .........................................................................19

        2.    Section 766(f)...........................................................................21

E.  Withdrawal of the reference is required to address the Trustee's novel theory that he is entitled to the value of letters of credit that he permitted to expire. ...........................................................................22

CONCLUSION.........................................................................................................................23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Freight Sys., Inc.* v. *ICC (In re Am. Freight Sys., Inc.),*
    150 B.R. 790 (D. Kan. 1993) ................................................. 17

*Bear, Stearns Sec. Corp.* v. *Gredd,*
    2001 WL 840187 (S.D.N.Y. July 25, 2001) ..........................10-11, 15, 21

*Brown* v. *Dellinger (In re Brown),*
    734 F.2d 119 (2d Cir. 1984) ................................................. 20

*Chemtura Corp.* v. *United States,*
    2010 WL 1379752 (S.D.N.Y. Mar. 26, 2010) ............................ 10

*Christensen* v. *Harris Cnty.,*
    529 U.S. 576 (2000) ........................................................... 19

*City of New York* v. *Exxon Corp.,*
    932 F.2d 1020 (2d Cir. 1991) ................................................. 9

*Cuomo* v. *Clearing House Ass'n,*
    557 U.S. 519 (2009) ........................................................... 16

*Drake* v. *Lab. Corp. of Am. Holdings,*
    458 F.3d 48 (2d Cir. 2006) ................................................... 16

*Enron Corp.* v. *J.P. Morgan Sec., Inc. (In re Enron Corp.),*
    388 B.R. 131 (S.D.N.Y. 2008) ............................................. 10

*Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.),*
    2004 WL 2711101 (S.D.N.Y. Nov. 23, 2004) ......................... 10, 17

*Farmer* v. *Crocker Nat'l Bank (In re Swift Aire Lines, Inc.),*
    30 B.R. 490 (B.A.P. 9th Cir. 1983) ....................................... 20-21

*FDA* v. *Brown & Williamson Tobacco Corp.,*
    529 U.S. 120 (2000) ........................................................... 16

*Fed. Mar. Comm'n* v. *Seatrain Lines, Inc.,*
    411 U.S. 726 (1973) ........................................................... 16

*Grede* v. *Fortis Clearing Americas LLC,*
    2009 WL 3518159 (N.D. Ill. Oct. 28, 2009) ............................ 11

*Ground Air Transfer, Inc.* v. *Westates Airlines, Inc.,*
    899 F.2d 1269 (1st Cir. 1990) ............................................. 13

*In re Dana Corp.,*
    379 B.R. 449 (S.D.N.Y. 2007) ............................................. 10, 21

*In re Policy Realty Corp.*,
    242 B.R. 121 (S.D.N.Y. 1999),
    *aff'd*, 213 F.3d 626, 2000 WL 534265 (2d Cir. 2000)............................ 23

*Itek Corp.* v. *First Nat'l Bank of Bos.*,
    730 F.2d 19 (1st Cir. 1984) ....................................................... 13

*Janus Capital Grp., Inc.* v. *First Derivative Traders*,
    131 S. Ct. 2296 (2011) ............................................................ 19

*Medtronic, Inc.* v. *Lohr*,
    518 U.S. 470 (1996)................................................................ 17

*N.Y. State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*,
    514 U.S. 645 (1995)................................................................ 18

*Old Carco LLC* v. *Kroger (In re Old Carco LLC)*,
    442 B.R. 196 (S.D.N.Y. 2010) .................................................... 19

*Picard* v. *Avellino*,
    469 B.R. 408 (S.D.N.Y. 2012) .................................................... 12

*Picard* v. *HSBC Bank PLC*,
    450 B.R. 406 (S.D.N.Y. 2011) .................................................... 12

*Picard* v. *JPMorgan Chase & Co. (In re Bernard L. Madoff)*,
    454 B.R. 307 (S.D.N.Y. 2011)......................................... 10, 11-12

*Ramos* v. *Baldor Specialty Foods, Inc.*,
    -- F.3d --, 2012 WL 2849656 (2d Cir. July 12, 2012) ....................... 19

*Rockwell Int'l Sys., Inc.* v. *Citibank, N.A.*,
    719 F.2d 583 (2d Cir. 1983) ..................................................... 13

*Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*,
    922 F.2d 984 (2d Cir. 1990) ..................................................... 10

*Sullivan* v. *Willock (In re Wey)*,
    854 F.2d 196  (7th Cir. 1988) .................................................... 23

*Travelers Cas. & Sur. Co. of Am.* v. *Pac. Gas & Elec. Co.*,
    549 U.S. 443 (2007)................................................................ 20

*Wyeth* v. *Levine*,
    555 U.S. 555 (2009)................................................................ 19

## Statutes and Administrative Materials

48 Fed. Reg. 8716 (Mar. 1, 1983)..........................................14-15, 22-23

7 U.S.C. § 16(e)(2)................................................................... 18

7 U.S.C. § 24(a) ..................................................................... 11

7 U.S.C. § 27(b) ..................................................................... 16

7 U.S.C. § 27a(a)(1)................................................................ 3, 16

7 U.S.C. § 6d(a)(2)............................................................... 8 n.2

11 U.S.C. § 108(b) .................................................................................................... 23

11 U.S.C. § 541(a)(1) ............................................................................................. 4, 20

11 U.S.C. § 766(f) .................................................................................................. 4, 22

11 U.S.C. § 766(h) ...................................................................................................... 21

11 U.S.C. §§ 761-767 ................................................................................................. 11

15 U.S.C. § 78c note ............................................................................................... 3, 16

17 C.F.R. § 190.02(f) .................................................................................................. 22

17 C.F.R. § 190.08(a) ........................................................................................... passim

17 C.F.R. § 30.7 ...................................................................................................... 8 n.2

28 U.S.C. § 157(d) ........................................................................................ 1, 2, 9, 11

Gramm-Leach-Bliley Act of 1999, Pub. L. No. 106-102. 113 Stat. 1338 .................................... 16

Legal Certainty for Bank Products Act of 2000, Pub. L. No. 106-554, 114 Stat. 2763 ............... 16

U.C.C. § 5-103(a) ....................................................................................................... 17

U.C.C. § 5-109 ..................................................................................................... 2, 13-14

U.C.C. § 5-110(a)(2) ............................................................................................... 2, 13

## Other Authorities

Feldman & Sommer, *The Special Commodity Provisions of the New Bankruptcy Code*,
   37 Bus. Law. 1487 (1982) ................................................................................... 15 n.3

## PRELIMINARY STATEMENT

ConocoPhillips Company and ConocoPhillips Canada Marketing & Trading ULC (together, "ConocoPhillips") respectfully move this Court for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference to the bankruptcy court of a motion to confirm made by the Trustee for MF Global Inc.  The Trustee's motion turns on significant and novel issues of federal non-bankruptcy law:  It will require a court to decide the validity, meaning and effect of a regulation promulgated by the Commodity Futures Trading Commission pursuant to the Commodity Exchange Act.  The Trustee's motion must accordingly be decided by this Court, not the bankruptcy court.

ConocoPhillips was a customer of MF Global, and before MF Global's bankruptcy, ConocoPhillips procured $205 million in standby letters of credit for MF Global's benefit.  Under the governing customer agreements, MF Global was entitled to draw upon those letters of credit *only* in the event of a default by ConocoPhillips.  No such default has occurred, and no such default will ever occur, because ConocoPhillips has moved all of its positions out of MF Global.

In its motion before the bankruptcy court, the Trustee has taken the position that — although the standby letters could only be drawn in the event of a default, and there has been no such default — a CFTC regulation allows him to treat the hypothetical "proceeds" of those undrawn letters of credit as "customer property" subject to *pro rata* distribution.  The Trustee does not dispute:  (1) that his predecessor, MF Global, was legally barred, as a matter of contract and state law, from drawing upon the letters of credit; or (2) that two of the relevant letters of credit expired by their terms, after MF Global's bankruptcy, without any action by the Trustee.  The Trustee contends instead that the CFTC has effectively relieved him of any obligation to

comply with MF Global's agreements or state law, and even of the obligation to *present* letters of credit for payment to realize their value.  As a result of the Trustee's flawed approach, ConocoPhillips has not received distributions from the MF Global estate to which it is entitled as a customer with a valid claim; instead, the Trustee has improperly treated the return or expiration of letters of credit as "distributions" to ConocoPhillips and offset those "distributions" against payments owed to ConocoPhillips.

Whoever is right about the letters of credit, only this Court may decide the question.  Under 28 U.S.C. § 157(d), the referral of a proceeding to the bankruptcy court must be withdrawn if the proceeding requires significant interpretation of federal laws other than the Bankruptcy Code.  This proceeding meets that requirement many times over.

*First*, withdrawal of the reference is required because the Trustee has put forward a completely novel interpretation of a CFTC regulation that has never been addressed by any court.  The Trustee has argued that, despite the absence of a required default on the part of ConocoPhillips, he is entitled to retain the face value of letters of credit based on a regulation stating that "[t]he full proceeds of a letter of credit" are treated as "customer property" in a brokerage liquidation.  17 C.F.R. § 190.08(a)(1)(i)(E).  This regulation, rationally read, presumes *lawful* "proceeds" and on its face does not authorize a trustee to *draw* upon letters of credit — thus *generating* "proceeds" — in violation of the debtor's contracts and state law, which defines any such unwarranted draw as "material fraud" and breach of warranty.  U.C.C. §§ 5-109 cmt. 1, 5-110(a)(2).  For that authority, the Trustee relies instead on a CFTC *commentary* known as a "Supplementary Information," which purports to endorse the rather bizarre theory that a trustee must draw upon letters of credit *even if* the bankrupt had no right to do so.  The Trustee's

2

invocation of both CFTC Rule 190.08(a) and related commentary as a license to flout contracts and state law presents an issue of first impression to be addressed by this Court.

*Second*, withdrawal of the reference is required to resolve the direct conflict between the Trustee's invocation of CFTC Rule 190.08(a) and amendments to the Commodity Exchange Act that expressly prohibit the CFTC from adopting *any* regulation with respect to letters of credit.  Congress has unambiguously legislated, in amendments to the CEA, that the CFTC has no authority to regulate "bank products," *including letters of credit*.  7 U.S.C. § 27a(a)(1); *see* 15 U.S.C. § 78c note.  Accordingly, as a matter of clear statutory law, the CFTC lacks authority to adopt Rule 190.08(a)(1)(i)(E), at least as that rule has been "interpreted" by the Trustee.  The Trustee's attempt to rely upon a regulation that Congress has explicitly precluded the CFTC from adopting presents another substantial issue that mandates withdrawal.

*Third*, withdrawal of the reference is required to address the preemption issues raised by the Trustee's motion.  Even if the CFTC were not statutorily prohibited from regulating letters of credit, there is still a significant question as to whether CFTC Rule 190.08(a), if interpreted as the Trustee suggests, could operate to preempt state letter-of-credit law.  Under uniform state law, as embodied in the Uniform Commercial Code, the beneficiary of a letter of credit commits "material fraud" and breach of warranty by presenting letters of credit without a right to do so.  Putting aside the CEA's express prohibition of *any* regulation with respect to letters of credit, Congress has not by statute authorized the CFTC to adopt any regulation that would operate to preempt such uniform state law, and there is:  (a) a strong presumption against preemption of uniform state law; and (b) a serious question as to whether under any circumstance that presumption could be overcome by this "Supplementary Information" that lacks the force of law.  Whether the CFTC has validly preempted state law, and whether it could

3

do so based on this mere commentary to a regulation, presents a substantial issue that mandates withdrawal.

*Fourth*, withdrawal of the reference is required to resolve the conflict between the Trustee's "interpretation" of CFTC Rule 190.08(a) and settled bankruptcy law. Section 541(a) of the Bankruptcy Code provides that a trustee succeeds only to the "legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). In accordance with this provision, it is bedrock law that a bankruptcy trustee does not have *greater* rights than the pre-petition debtor under governing contracts and state law. The Trustee's motion turns this principle on its head: the Trustee argues that, by virtue of a commentary as to a CFTC regulation, he can step out of MF Global's shoes and violate both the debtor's contracts and state law. The Trustee even asserts that, unlike MF Global, he does not have to draw upon letters of credit at all to realize their value. It is for this Court to decide whether the CFTC regulation could have the dramatic effect that the Trustee claims, at odds with federal bankruptcy law. This Court also needs to decide whether the Trustee's position that a CFTC regulation authorizes him to violate state law can be reconciled with the language in section 766(f) of the Bankruptcy Code that requires a trustee to reduce property to cash in accordance with "good market practice."

*Fifth*, withdrawal of the reference is required to address the Trustee's entirely untenable position with respect to the letters of credit that expired by their own terms without any action by the Trustee. Of the letters of credit at issue, two of the letters of credit (with a face value of $60 million) expired on November 23, 2011, without the Trustee drawing upon those letters and without any agreement in place that relieved him of the requirement to do so. The Trustee's argument that he is entitled under the CFTC regulation to treat the *expiration* of letters

of credit he held in his own hands as "distributions" is contradicted by the regulation itself, the Supplementary Information and settled bankruptcy law, and should be considered by this Court.

## BACKGROUND

This proceeding arises out of the collapse of MF Global. MF Global was a commodity brokerage firm and futures commission merchant. ConocoPhillips Company and ConocoPhillips Canada Marketing & Trading ULC were at one time customers of MF Global.

### A.     ConocoPhillips Company and MF Global

On June 18, 2001, ConocoPhillips Company entered into a customer agreement with MF Global (the "Customer Agreement"). Ex. C.[1] In connection with the Customer Agreement, ConocoPhillips Company provided two standby letters of credit — which expired by their terms on November 23, 2011 — to support commodity contract trading by ConocoPhillips Company on certain foreign exchanges (the "Expired Foreign Letters of Credit"). As a prerequisite to presentment, each of the Expired Foreign Letters of Credit required an authorized representative of MF Global to certify that ConocoPhillips Company "has defaulted in accordance with the terms and conditions of the [parties'] agreement." The Expired Foreign Letters of Credit include:

- Irrevocable Standby Letter of Credit No. 083400-793 issued by Intesa Sanpaolo S.p.A. in an amount (as amended) of $15 million. Ex. D.

- Irrevocable Standby Letter of Credit No. 083399-793 issued by Intesa Sanpaolo S.p.A. in an amount (as amended) of $45 million. Ex. E.

---

[1] References to "Exs." are to the exhibits to the accompanying Declaration of Emil A. Kleinhaus. The Trustee's motion to confirm his treatment of the letters of credit is attached to the Declaration as Exhibit A. The declaration of Anson B. Frelinghuysen in support of the Trustee's motion, along with the exhibits thereto, is attached to the Declaration as Exhibit B.

ConocoPhillips Company also obtained three other standby letters of credit for the joint benefit of MF Global and Chicago Mercantile Exchange, Inc.  These three letters of credit were due to expire on March 30, 2012, and were provided by ConocoPhillips Company to MF Global to support commodity contract trading on domestic exchanges (the "Domestic Letters of Credit").  The Domestic Letters of Credit include:

- Irrevocable Standby Letter of Credit No. S11038, issued by Svenska Handelsbanken, New York Branch, in an amount (as amended) of $15 million.  Ex. F.

- Irrevocable Standby Letter of Credit No. S11037, issued by Svenska Handelsbanken, New York Branch, in an amount of $50 million.  Ex. G.

- Irrevocable Standby Letter of Credit No. 777-52-0101408-L, issued by Standard Chartered Bank, in an amount of $70 million.  Ex. H.

The Customer Agreement between ConocoPhillips Company and MF Global requires an event of default on the part of ConocoPhillips before MF Global can present any of these letters of credit or otherwise dispose of collateral.  *See, e.g.*, Ex. C §§ 4-5.  There has been no such event of default; the Trustee does not claim otherwise.  ConocoPhillips Company has transferred all of its positions out of MF Global and does not owe any amounts to MF Global.

### B.     ConocoPhillips Canada and MF Global

On October 23, 2008, ConocoPhillips Canada Marketing and Trading ULC ("ConocoPhillips Canada") entered into a Customer Agreement with MF Global (the "Canada Customer Agreement").  Ex. I.  In connection with the Canada Customer Agreement, ConocoPhillips Canada provided MF Global with the following standby letter of credit:

- Irrevocable Standby Letter of Credit No. S06229, issued by Svenska Handelsbanken, New York Branch, in an amount (as amended) of $10 million (the "Canada Letter of Credit").  Ex. J.

The Canada Letter of Credit was due to expire on July 25, 2012 and, prior to presentment, once again required an authorized representative of MF Global to certify that ConocoPhillips Canada "has defaulted in accordance with the terms and conditions of the contracting party's agreement."

The Canada Customer Agreement permits MF Global to draw on letters of credit or otherwise exercise remedies only if specified default events occur.  Ex. I § 4.  None of those events has occurred; again, the Trustee does not clam otherwise.  ConocoPhillips Canada has transferred all of its positions out of MF Global and does not owe any amounts to MF Global.

## C.      The expiration of the foreign letters of credit

On October 31, 2011, the Trustee was appointed.  On November 23, 2011, the Expired Foreign Letters of Credit (with a face value of $60 million) expired by their terms without being drawn upon by the Trustee, even though they were in his possession.  At that time, the Trustee and ConocoPhillips had not entered into any agreement staying the effect of such expiration or otherwise reserving the Trustee's rights.  Rather, the Trustee simply permitted the letters of credit to expire and they are no longer extant in any way.

## D.      The parties' interim agreement

In advance of the expiration of the Domestic Letters of Credit on March 30, 2012, the parties engaged in discussions regarding an arrangement that would avoid the need for litigation regarding the Domestic Letters of Credit prior to their expiration.  On March 26, 2012, the Trustee and ConocoPhillips entered into an Interim Agreement.  Ex. K.  The interim

agreement provided for the return to ConocoPhillips of all letters of credit, including both expired and unexpired letters of credit, and reserved without prejudice all of the parties' claims, positions and defenses as of that time.  *Id*. ¶¶ 1, 6.

### E.    The Trustee's determination of ConocoPhillips' claims

On December 16, 2011, ConocoPhillips Company and ConocoPhillips Canada filed customer claims against the MF Global estate.  Exs. L-M.  The customer claims seek to recover cash that ConocoPhillips held at MF Global at the time of its bankruptcy.

On May 22, 2012, ConocoPhillips received the Trustee's determination of its claims.  The Trustee determined that ConocoPhillips Company has an allowed claim to "Section 4d" property (*i.e.* for domestic futures accounts)[2] totaling $175,790,952, and that ConocoPhillips Company has already received $135,000,000 in satisfaction of that claim.  Ex. N.  Included in both the allowed claim amount and the amount supposedly received by ConocoPhillips Company is the face value of the Domestic Letters of Credit (totaling $135,000,000).

The Trustee also determined that ConocoPhillips Company has an allowed claim to "Rule 30.7 Property" (*i.e.* for foreign futures accounts) totaling $85,755,528, and that ConocoPhillips Company has already received $60,000,000 of that amount.  Included in both of those calculations is the face value of the Expired Foreign Letters of Credit (totaling $60,000,000).

In addition, the Trustee determined that ConocoPhillips Canada has an allowed claim to "Rule 30.7 Property" totaling $34,866,553, and that ConocoPhillips Canada has already

---

[2]  Domestic futures accounts are governed by Section 4d(2) of the Commodity Exchange Act (codified at 7 U.S.C. § 6d(a)(2)).  Foreign futures accounts are governed by 17 C.F.R. § 30.7.

received $10,000,000 in respect of that claim.  Ex. O.  Included in both of the Trustee's

calculations is the face value of the Canada Letter of Credit ($10,000,000).

  **F.**  **The Trustee's motion to confirm**

    On June 22, 2012, ConocoPhillips filed an objection to the Trustee's

determinations.  Ex. P.  On July 30, 2012, the Trustee then filed a motion seeking to confirm his

determination of ConocoPhillips' claims, including his treatment of the letters of credit.  Ex. A.

ConocoPhillips now seeks to withdraw the reference with respect to that motion.

**ARGUMENT**

    Section 157(d) of the Judicial Code provides for mandatory withdrawal of the

reference when certain requirements are met:

> The district court may withdraw, in whole or in part, any case or
> proceeding referred under this section, on its own motion or on
> timely motion of any party, for cause shown.
>
> The district court *shall*, on timely motion of a party, so withdraw a
> proceeding if the court determines that resolution of the proceeding
> requires consideration of both title 11 [the Bankruptcy Code] and
> other laws of the United States regulating organizations or
> activities affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  Because the Trustee's motion to confirm plainly requires

"consideration of . . . other laws of the United States regulating organizations or activities

affecting interstate commerce," it is subject to mandatory withdrawal of the reference.

**I.**  **WITHDRAWAL OF THE REFERENCE IS MANDATORY WHEN**
   **A PROCEEDING REQUIRES SIGNIFICANT INTERPRETATION**
   **OF FEDERAL LAW OTHER THAN THE BANKRUPTCY CODE.**

    Section 157(d) requires withdrawal of the reference of any proceeding that

involves "significant interpretation, as opposed to simple application, of federal laws apart from

the bankruptcy statutes."  *City of New York* v. *Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991).

9

A motion for withdrawal must accordingly be granted whenever "substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for resolution of the proceedings." *Shugrue* v. *Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 995 (2d Cir. 1990). As judges in this District have repeatedly held, if a court must "engage itself in the intricacies of non-[b]ankruptcy law, as opposed to routine application of that law," withdrawal of the reference is required. *Chemtura Corp.* v. *United States*, 2010 WL 1379752, at *1 (S.D.N.Y. Mar. 26, 2010) (quoting *Shugrue*, 922 F.2d at 995) (internal quotation marks omitted); *accord, e.g.*, *Picard* v. *JPMorgan Chase & Co. (In re Bernard L. Madoff)*, 454 B.R. 307, 312 (S.D.N.Y. 2011); *Enron Power Mktg., Inc.* v. *Cal. Power Exch. Corp. (In re Enron Corp.)*, 2004 WL 2711101, at *2 (S.D.N.Y. Nov. 23, 2004).

For withdrawal to be mandatory under section 157(d), "the district court is not required to find that novel or unsettled questions of non-bankruptcy law are presented in order to withdraw the reference." *Enron Corp.* v. *J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 388 B.R. 131, 139 (S.D.N.Y. 2008); *accord Enron Power Mktg.*, 2004 WL 2711101, at *2. But if such questions do exist, they weigh heavily in favor of withdrawal: "where matters of first impression are concerned, the burden of establishing a right to mandatory withdrawal is more easily met." *Bear, Stearns Sec. Corp.* v. *Gredd*, 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001) (internal quotation marks omitted). Similarly, although the court is not required to find a conflict between bankruptcy and non-bankruptcy law to withdraw the reference, the standard for mandatory withdrawal is met when a non-bankruptcy statute or regulation even "'*arguably* conflicts' with the Bankruptcy Code." *In re Dana Corp.*, 379 B.R. 449, 459 (S.D.N.Y. 2007) (emphasis added) (quoting *Gredd*, 2001 WL 840187, at *2).

1of 30

In deciding whether withdrawal is mandatory, a district court "need not evaluate the merits of the parties' claims"; rather, it is sufficient for the court to determine that the proceeding will "involve consideration of federal non-bankruptcy law." *JPMorgan*, 454 B.R. at 312 (quoting *Gredd*, 2001 WL 840187, at *4) (internal quotation marks omitted).  Withdrawal of the reference is appropriate not only to interpret statutes that govern commerce, such as the Commodity Exchange Act, but also to interpret regulations promulgated by administrative agencies under such statutes.  *E.g.*, *Grede* v. *Fortis Clearing Americas LLC*, 2009 WL 3518159, at *3-4 (N.D. Ill. Oct. 28, 2009) (granting motion to withdraw to resolve "open and unresolved issue[s]" relating to the interpretation of the Commodity Exchange Act and CFTC regulations); *Gredd*, 2001 WL 840187, at *4 (granting motion to withdraw "to interpret the various provisions of the federal securities laws," including SEC rules and regulations).

Here, there can be no question that the CFTC Part 190 Rules, on which the Trustee has predicated his motion, are non-title 11 "laws of the United States regulating organizations or activities affecting interstate commerce."  28 U.S.C. § 157(d).  The Trustee acknowledges that the CFTC promulgated those regulations under 7 U.S.C. § 24(a), a provision of the CEA that is codified in the title of the U.S. Code pertaining to "Agriculture" and the chapter pertaining to "Commodity Exchanges" — and not in title 11.  Ex. A ¶ 27.

The fact that the CFTC rules supplement the commodity broker liquidation provisions of the Bankruptcy Code, 11 U.S.C. §§ 761-767, does not change the analysis. Directly on point are the cases arising out of the Madoff liquidation.  The trustee for Madoff's brokerage firm recently argued that "SIPA is effectively a bankruptcy statute and, therefore, interpretation of SIPA does not satisfy the mandatory withdrawal requirement of Section 157(d)."  *JPMorgan*, 454 B.R. at 316.  Judge McMahon found this argument "not persuasive":

> [W]hile a SIPA liquidation proceeding may be maintained in the
> bankruptcy court, and SIPA incorporates provisions of the
> Bankruptcy Code, SIPA expressly provides that it is part of the
> securities laws and is codified in Title 15, not Title 11. Section
> 157(d) requires mandatory withdrawal if a proceeding "requires
> consideration of both title 11 and other laws of the United
> States . . . ." Thus, an issue that requires significant interpretation
> of SIPA undoubtedly requires consideration of laws other than
> Title 11. Regardless of a bankruptcy court's familiarity with a
> statute outside of Title 11, the requirements for mandatory
> withdrawal are satisfied if the proceeding requires consideration of
> a law outside of Title 11.

*Id.* (citations omitted); *accord, e.g.*, *Picard* v. *Avellino*, 469 B.R. 408, 411-12 (S.D.N.Y. 2012);

*Picard* v. *HSBC Bank PLC*, 450 B.R. 406, 410 (S.D.N.Y. 2011). Here, likewise, the CEA is

codified in *title 7* of the U.S. Code, not title 11, and the CFTC regulations at issue were

promulgated under the CEA, not title 11.

## II.   WITHDRAWAL OF THE REFERENCE IS REQUIRED HERE TO ADDRESS NUMEROUS NOVEL ISSUES OF FEDERAL NON-BANKRUPTCY LAW.

Since both the Commodity Exchange Act and the CFTC regulation invoked by

the Trustee unquestionably constitute non-bankruptcy laws, the only issue on this withdrawal

motion is whether the Trustee's motion requires significant interpretation of those laws. It surely

does. The Trustee's interpretation of the CFTC regulation at issue is the sole basis for his

claimed right to the value of the letters of credit. That interpretation is both novel and debatable,

to say the least. It also conflicts with numerous federal statutes, including both the CEA itself

and the Bankruptcy Code, and raises substantial preemption issues.

**A.     Withdrawal of the reference is required in light of the
Trustee's unprecedented reliance on CFTC Rule 190.08(a)
and related commentary.**

To begin with, the Trustee's interpretation of CFTC Rule 190.08(a) is

unprecedented, and deciding whether that interpretation is correct presents a significant issue of

federal non-bankruptcy law.

There is no dispute that the relevant customer agreements required a default on

the part of ConocoPhillips before MF Global could draw upon them and that ConocoPhillips did

*not* default under those agreements. Ex. A ¶¶ 20, 30.  Accordingly, there is no question that the

Trustee, as successor to MF Global, would have violated the parties' contractual arrangements

by drawing upon any of the standby letters of credit.  Under the Uniform Commercial Code, the

Trustee, as successor to MF Global, would also have committed both "material fraud" and

breach of warranty had he presented the letters of credit.  Section 5-109(b) of the Uniform

Commercial Code provides that presentment of a letter of credit may be enjoined if "honor of the

presentation would facilitate a material fraud by the beneficiary on the issuer or applicant."

Section 5-110(a)(2) of the U.C.C. further provides that if a letter of credit "is honored," then "the

beneficiary warrants . . . [t]o the applicant that the drawing does not violate any agreement

between the applicant and beneficiary."  Under long-established case law, presentation of a letter

of credit constitutes material fraud where, as in this case, "the circumstances *plainly* show that

the underlying contract forbids the beneficiary to call a letter of credit" or "where they show that

the contract deprives the beneficiary of even a *colorable* right to do so."  *Ground Air Transfer,

Inc.* v. *Westates Airlines, Inc.*, 899 F.2d 1269, 1273 (1st Cir. 1990) (Breyer, J.) (internal

quotation marks omitted); *accord, e.g.*, *Itek Corp.* v. *First Nat'l Bank of Bos.*, 730 F.2d 19, 25

(1st Cir. 1984); *Rockwell Int'l Sys., Inc.* v. *Citibank*, *N.A.*, 719 F.2d 583, 585, 588-89 (2d Cir.

1983); *see also* U.C.C. § 5-109 cmt. 1 (beneficiary commits "material fraud" by presenting a letter of credit despite having "no colorable right to expect honor and where there is no basis in fact to support such a right to honor").

The Trustee's basic theory is that, once a commodity broker files for bankruptcy, CFTC regulations operate to supplant both controlling contracts and state law, permitting him to treat the face value of letters of credit as "customer property" subject to *pro rata* distribution. For this theory, the Trustee relies upon CFTC Rule 190.08(a), in which the CFTC has defined "customer property" — the category of property that is distributed *pro rata* to brokerage customers — to encompass "[t]he full *proceeds of a letter of credit* if such letter of credit was received, acquired or held to margin, guarantee, secure, purchase or sell a commodity contract." 17 C.F.R. § 190.08(a)(1)(i)(E) (emphasis added).

The regulation is completely silent, however, on the question of *how* the "proceeds" of a letter of credit are to be created. Although the regulation defines "customer property" to include the "proceeds" of letters of credit, there is no fair reading of the regulation under which it calls for unlawful conduct on the part of a trustee: the words of the regulation do not so much as hint that "customer property" in the form of "proceeds" may be generated through "material fraud" or breach of warranty. For that proposition, the Trustee relies instead upon a CFTC commentary called the "Supplementary Information," in which the agency expressed the view that, under CFTC Rule 190.08(a), the trustee of a bankrupt futures commission merchant is "required to draw the full value of a letter of credit posted as margin and treat the funds received as customer property, irrespective of the margin obligation secured thereby." 48 Fed. Reg. 8716, 8718 (Mar. 1, 1983). Accordingly, in purporting to "interpret" the

regulation, the Supplementary Information in fact dramatically *alters* the regulation, suggesting for the first time that a trustee must draw upon letters of credit "irrespective of their terms." *Id.*

      The Trustee's reliance on both the regulation and the Supplementary Information is unprecedented and raises issues of first impression. As noted above, the CFTC regulation itself does not authorize the Trustee to draw upon letters of credit, generating "proceeds," in violation of contracts and state law. And the Supplementary Information, rather than "interpreting" the regulation, essentially creates a new — and astonishing — rule that would "require" a trustee to provide *false warranties* and commit "material fraud" to draw upon letters of credit. Withdrawal of the reference is plainly required to decide whether the Trustee has properly construed and relied upon CFTC Rule 190.08(a) and the related commentary. *See, e.g.*, *Gredd*, 2001 WL 840187, at *3 (granting motion to withdraw the reference to consider issue that was "arguably novel" under securities laws and related regulations).[3]

### B. Withdrawal of the reference is required to resolve the direct conflict between the Trustee's interpretation of CFTC Rule 190.08(a) and amendments to the Commodity Exchange Act that prohibit the CFTC from regulating letters of credit.

      Withdrawal of the reference is also required to resolve the blatant conflict between the Trustee's reliance on CFTC Rule 190.08(a), which was adopted pursuant to the Commodity Exchange Act, and the statutory provision of the CEA itself that categorically *prohibits* the CFTC from regulating "bank products," including "letters of credit."

---

[3] From the time the CFTC Part 190 regulations were proposed, commentators have questioned whether the CFTC exceeded its regulatory authority in purporting to alter contractual arrangements governing letters of credit. *See, e.g.*, Franklin Feldman & Judah C. Sommer, *The Special Commodity Provisions of the New Bankruptcy Code*, 37 Bus. Law. 1487, 1511 (1982) ("The [CFTC's] proposed treatment of letters of credit [in 190.08(a)(1)(E)] may exceed the commission's authority" because there is "no suggestion in the statutory definition of customer property, or the CFTC's rulemaking power with respect thereto, that Congress intended to override private contractual arrangements.").

In 2000, Congress enacted the Legal Certainty for Bank Products Act to exclude certain banking products from the CEA and from the CFTC's regulatory authority.  Pub. L. No. 106-554, 114 Stat. 2763.  That Act, as amended in 2010 by the Dodd-Frank Wall Street Reform and Consumer Protection Act, states that "the Commodity Exchange Act . . . shall not apply to, and the Commodity Futures Trading Commission shall not exercise regulatory authority under the Commodity Exchange Act  . . . with respect to, an identified banking product," subject to exceptions not relevant here.  7 U.S.C. § 27a(a)(1).  For purposes of this exclusion, Congress has defined "identified banking product" to *include* a bank-issued letter of credit.  7 U.S.C. § 27(b) (cross referencing definition of that term in section 206(a) of the Gramm-Leach-Bliley Act of 1999, Pub. L. No. 106-102, 113 Stat. 1338, which includes "a letter of credit issued or loan made by a bank," *id.* § 206(a)(3), 113 Stat. at 1393) (codified at 15 U.S.C. § 78c note).  Accordingly, Congress has stated in clear and unambiguous terms — in a statutory amendment to the CEA itself (which is codified in chapter 1 of title 7) — that letters of credit are *outside* the scope of the CFTC's regulatory authority.

To state the obvious, an agency may not "exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law."  *FDA* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) (internal quotation marks omitted); *accord, e.g.*, *Fed. Mar. Comm'n* v. *Seatrain Lines, Inc.*, 411 U.S. 726, 745 (1973) ("an agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate").  As a result, the effect of an agency's actions can in no case "exceed the agency's delegated authority."  *Drake* v. *Lab. Corp. of Am. Holdings*, 458 F.3d 48, 63 (2d Cir. 2006); *accord, e.g.*, *Cuomo* v. *Clearing House Ass'n*, 557 U.S. 519, 531-33, 536 (2009).

16

The CFTC's manifest lack of statutory authority to regulate letters of credit defeats any argument that the CFTC can authorize bankruptcy trustees to draw on letters of credit in violation of contracts and state law.  Thus, this matter presents substantial questions of first impression as to the scope of the CFTC's authority requiring withdrawal of the reference. *E.g.*, *Enron Power Mktg.*, 2004 WL 2711101, at *4 (mandatory withdrawal warranted to consider whether the Federal Energy Regulatory Commission had authority to determine whether letter-of-credit proceeds must be turned over to a bankruptcy estate); *Am. Freight Sys., Inc.* v. *ICC (In re Am. Freight Sys., Inc.)*, 150 B.R. 790, 795 (D. Kan. 1993) (mandatory withdrawal warranted where action required determination of whether the Interstate Commerce Commission "had the authority under the Interstate Commerce Act to promulgate the recent regulations at issue").

**C.    Withdrawal of the reference is required to address substantial preemption issues raised by the Trustee's motion.**

Even on the assumption that the CFTC were not barred (as it is) from regulating letters of credit, and that the "Supplementary Information" can alter the terms of the CFTC regulation as claimed by the Trustee, there would be serious questions presented here as to whether the CFTC has validly preempted state law.  For numerous reasons, ConocoPhillips submits that the supposed rule set forth in the Supplementary Information would *not* validly preempt state law.

In preemption cases, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic, Inc.* v. *Lohr*, 518 U.S. 470, 485 (1996) (ellipses and internal quotation marks omitted).  Letters of credit have long been governed by Article 5 of the Uniform Commercial Code as a matter of state law.  *See* U.C.C. § 5-103(a).

17

Nothing in the CEA affords the CFTC the power to preempt uniform state letter-of-credit law by regulation or in any other way.  Questions of preemption, like other matters of statutory construction, must "begin . . . with the text of the provision in question."  *N.Y. State Conference of Blue Cross & Blue Shield Plans* v. *Travelers Ins. Co.*, 514 U.S. 645, 655 (1995).  The CEA contains only one provision that explicitly preempts state law.  That provision states that the CEA "shall supersede and preempt the application of any State or local law that prohibits or regulates gaming or the operation of bucket shops" to the extent those laws apply to certain contracts.  7 U.S.C. § 16(e)(2).  By contrast, the CEA does not say a word about preempting letter-of-credit law; to the contrary, the CEA *prohibits* the CFTC from regulating letters of credit.  *See* Point II.B, *supra*.  In addition, as discussed above, Rule 190.08(a) defines "customer property" to include the "proceeds" of letters of credit, but likewise says nothing about preemption of state letter-of-credit law.

The Trustee points out that the House Report accompanying the CEA states that "the authority in the Commodity Exchange Act (and the regulations issued by the Commission) would preempt the field insofar as futures regulation is concerned."  Ex. A ¶ 37 (citing H.R. Rep. No. 93-1383 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5894, at 5897).  Putting aside that this House Report antedates by more than 25 years Congress's express prohibition against CFTC authority over letters of credit, the House Report only begs the question:  What does the field of "futures regulation" encompass?  Both the CEA itself and the presumption against preemption suggest that this "field" does *not* include letter-of-credit law.

The *only* source identified by the Trustee that suggests any intent to preempt state letter-of-credit law is the Supplementary Information issued by the CFTC.  But the Supplementary Information, mere agency commentary, cannot evince *Congressional* intent to

preempt state law.  Moreover, that commentary does not itself have preemptive effect because agency commentary lacks the "force of law."  *Wyeth* v. *Levine*, 555 U.S. 555, 576-80 (2009); *accord, e.g.*, *Ramos* v. *Baldor Specialty Foods, Inc.*, -- F.3d --, 2012 WL 2849656, at *4 (2d Cir. July 12, 2012).

Although the Trustee has argued for deference to the CFTC's "interpretation" of its own regulation, such deference is potentially warranted "only when the language of the regulation is ambiguous."  *Christensen* v. *Harris Cnty.*, 529 U.S. 576, 588 (2000); *accord, e.g.*, *Janus Capital Grp., Inc.* v. *First Derivative Traders*, 131 S. Ct. 2296, 2303 n.8 (2011).  CFTC Rule 190.08(a) is not ambiguous:  it says nothing to indicate that a trustee is authorized to breach agreements, provide false warranties or engage in material fraud to draw upon letters of credit. Moreover, as will be demonstrated in briefing on the merits, the process by which the Supplementary Information was promulgated precludes any notion that it is entitled to deference. *See Wyeth*, 555 U.S. at 577 ("The weight we accord the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.").

Once again, at a minimum, the preemption issues discussed above mandate withdrawal of the reference.  *See, e.g.*, *Old Carco LLC* v. *Kroger (In re Old Carco LLC)*, 442 B.R. 196, 202 (S.D.N.Y. 2010) (mandatory withdrawal warranted where the movant raised "substantial and material" issues concerning federal preemption).

### D. Withdrawal of the reference is required to resolve conflicts between the Trustee's interpretation of CFTC Rule 190.08(a) and provisions of the Bankruptcy Code.

#### 1. Section 541(a)

The Trustee's interpretation of CFTC Rule 190.08(a) conflicts with provisions of the Bankruptcy Code — thereby raising additional issues that require withdrawal of the

reference.  The crux of the Trustee's argument in the Motion is that the CFTC regulation grants the trustee for a bankrupt commodity broker *greater* rights with respect to letters of credit than the broker had prior to its bankruptcy.  Indeed, according to the Trustee, a trustee does not even have to present a letter of credit in order to seize its value.  Adoption of the Trustee's position would represent a fundamental departure from established bankruptcy law.

Section 541(a) of the Bankruptcy Code provides that the commencement of a bankruptcy case "creates an estate," which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Under that provision, a "bankruptcy estate can have no greater interest in property included in it than the debtor had when the petition was filed."  *Brown* v. *Dellinger (In re Brown)*, 734 F.2d 119, 124 (2d Cir. 1984); *see also Travelers Cas. & Sur. Co. of Am.* v. *Pac. Gas & Elec. Co.*, 549 U.S. 443, 450-51 (2007) ("[W]e have long recognized that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law." (internal quotation marks omitted)).

The bedrock rule that a trustee has no greater rights than the pre-petition debtor has been squarely applied to debtors who are beneficiaries under letters of credit.  In *Farmer* v. *Crocker Nat'l Bank (In re Swift Aire Lines, Inc.)*, 30 B.R. 490 (B.A.P. 9th Cir. 1983), a Bankruptcy Appellate Panel held that where a bankruptcy trustee succeeds to a debtor's rights in a letter of credit, "the Bankruptcy Code [does] not give the trustee the power to automatically enforce payment thereunder if state law requiring strict compliance of tender documents would dictate otherwise."  *Id.* at 495.  *Farmer* upheld a bank's refusal to honor a trustee's attempt to draw on a letter of credit issued in favor of the debtor, where the letter specified that the debtor's

corporate secretary had to sign a statement before the letter could be drawn.   Because the bankruptcy filing eliminated the power of the corporate secretary to act on behalf of the debtor, the Court held that the required statement could no longer be provided, and therefore the letter could not be drawn by the trustee.  *Id.*

Here, the relevant customer agreements and letters of credit gave MF Global the right to draw on the letters *only* if certain conditions were met.  That conditional contract right — and nothing else — became property of MF Global's estate under section 541(a) of the Bankruptcy Code.  By contrast, the hypothetical "proceeds" of the letters of credit *never* became "property of the estate," because the conditions for drawing upon those letters did not occur.

It is for this Court to decide whether, in contravention of section 541(a) of the Bankruptcy Code, the CFTC has validly *expanded* the trustee's rights under letters of credit beyond those of the pre-petition debtor.  *See, e.g.*, *In re Dana Corp.*, 379 B.R. at 459 (withdrawal required "even where a non-bankruptcy federal statute only 'arguably conflicts' with the Bankruptcy Code"); *Gredd*, 2001 WL 840187, at *4 (granting withdrawal motion to resolve an "arguabl[e] conflict[]" between the Bankruptcy Code and "other federal regulations").

### 2.    Section 766(f)

If accepted, the Trustee's interpretation of CFTC Rule 190.08(a) would also create a conflict with the provision of the Bankruptcy Code and the CFTC rule that govern the Trustee's conduct in liquidating collateral held by a bankrupt commodity broker.

Sections 761 through 767 of the Bankruptcy Code establish the framework for the liquidation of a commodity broker.  Subject to exceptions not relevant here, section 766(h) requires that "customer property" be distributed ratably to customers in the form of (1) cash or (2) the return of certain "specifically identifiable" property.  To facilitate the cash distributions,

section 766(f) directs the trustee, "[a]s soon as practicable after the commencement of the case," to "reduce to money, *consistent with good market practice*, all securities and other property . . . held as property of the estate" except for specifically identifiable customer property.  11 U.S.C. § 766(f) (emphasis added).  The CFTC regulations are consistent with this requirement, as they direct the trustee to liquidate, subject to "*applicable procedures under the Bankruptcy Code*," all "property held by or for the account of a debtor" except for certain specified forms of property not relevant here.  17 C.F.R. § 190.02(f) (emphasis added).

Here, had the Trustee attempted to draw on the letters of credit, he would have engaged in breach of contract, material fraud, and breach of warranty under applicable law. Such unlawful conduct cannot be squared with any notion of "good market practice."  Whether CFTC Rule 190.08(a) should be read to supplant section 766(f) of the Bankruptcy Code and CFTC Rule 190.02(f) is another issue of first impression to be decided by this Court.

### E.   Withdrawal of the reference is required to address the Trustee's novel theory that he is entitled to the value of letters of credit that he permitted to expire.

The Trustee's treatment of the Expired Foreign Letters of Credit raises issues beyond his treatment of the letters of credit that were unexpired at the time of the parties' interim agreement of March 26, 2012.  The Trustee has argued that the expiration of these letters resulted in a "distribution" to ConocoPhillips to which the Trustee is entitled.  Ex. A. ¶ 34.

The Trustee's position is both unprecedented and entirely devoid of legal support. By its plain terms, CFTC Rule 190.08(a) provides that the "*proceeds*" of a letter of credit should be treated as "customer property," making patently clear that a letter of credit must be *drawn* in order for a trustee to distribute its value as "customer property."   Even the Supplementary Information states that a trustee is "*required to draw* the full value of a letter of credit posted as

margin and treat the funds received as customer property."  48 Fed. Reg. at 8718 (emphasis

added).  Yet here, the Trustee, who held the Expired Foreign Letters of Credit, *never* drew upon

them prior to their expiration, and thus forfeited any possible right to their "proceeds."[4]

Moreover, the Trustee has again taken a position that conflicts with settled

bankruptcy law, which does not protect a trustee from the consequences of a contractual

expiration.  Under the Bankruptcy Code, "[p]ossession of expired rights is the equivalent of the

possession of no rights."  *Sullivan* v. *Willock (In re Wey)*, 854 F.2d 196, 199 (7th Cir. 1988).

"[T]he automatic stay does not toll the running of time under a contract and does not prevent the

automatic termination of a contract."  *In re Policy Realty Corp.*, 242 B.R. 121, 126 (S.D.N.Y.

1999), *aff'd*, 213 F.3d 626, 2000 WL 534265, at *2 (2d Cir. 2000).

The Trustee's suggestion that he was excused indefinitely from presenting letters

of credit likewise conflicts with the Bankruptcy Code.  Section 108(b) of the Bankruptcy Code

states that a trustee may file any "pleading, demand, notice, or proof of claim or loss, cure of

default, or perform any similar act" before the *later* of the date set by agreement or 60 days after

a bankruptcy filing.  11 U.S.C. § 108(b).  The statute, accordingly, expressly tolls certain notice

periods until 60 days after a bankruptcy, no more.  The Trustee's apparent claim that CFTC

regulations override section 108(b) — without saying so — should be addressed by this Court.

## CONCLUSION

It is respectfully submitted that this Court should order that the reference of this

proceeding to the bankruptcy court be withdrawn.

---

[4]  As ConocoPhillips will demonstrate, the Trustee's argument (Ex. A ¶ 34) that the expiration of
letters of credit would have resulted in a margin call outside of bankruptcy is totally irrelevant.  It
is also flatly wrong in a situation such as this, where the broker's customer no longer has any
positions at the broker that require margin.

Dated:   New York, New York
         August 3, 2012

WACHTELL, LIPTON, ROSEN & KATZ

By:  __/s/  Herbert M. Wachtell
      Herbert M. Wachtell
      George T. Conway III
      Emil A. Kleinhaus
      Daniel A. Rubens
      Dana J. Brusca
51 West 52nd Street
New York, New York  10019
(212) 403-1000
HMWachtell@WLRK.com

         -and-

CADWALADER, WICKERSHAM & TAFT LLP
Mark C. Ellenberg
700 Sixth Street, N.W.
Washington, D.C.  20001
(202) 862-2200

*Attorneys for ConocoPhillips Company and
     ConocoPhillips Canada Marketing &
     Trading ULC*